RONALD ADY, PLLC (USB 3694)
8 East Broadway, Ste. 725
Salt Lake City, UT 84111
(801) 530-3122
(801) 746-3501 fax

Attorney for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JOHN AMADOR,<br><br>Plaintiff,<br><br>v.<br><br>CROSSROADS FITNESS OF SANDY, LLC, THRIVE SYSTEMS, INC. dba NATIONAL FITNESS, GRANITE LAW GROUP, PLLC, Does I through XV.<br><br>Defendants. | **COMPLAINT**<br><br><br>**Case No.**<br><br>**Judge**<br><br>**Magistrate Judge** |

Plaintiff John Amador, by and through counsel, complains against the above-referenced Defendants as follows.

I.    **PRELIMINARY STATEMENT**

1.      This action is in response to an unfounded debt action by the Defendants to collect about ten times the balance actually owing on a debt which was not in default, which non-defaulted balance the Plaintiff nevertheless attempted to pay and which the Defendants refused to accept. Because of the Defendants' wrongful debt collection activities and unfounded legal action the Plaintiff John Amador suffered substantial

emotional distress, including the embarrassment and humiliation of having his wages garnished for an amount he did not owe.

II.     **JURISDICTION AND RELATIONSHIP OF THE PARTIES**

2.      Plaintiff seeks relief pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § l692, the Utah Consumer Sales Practices Act, *Utah Code* § 13-11-1 et seq.  (UCSPA), and state common-law claims.

3.      The Court has jurisdiction pursuant to l5 U.S.C. § 1692k; 28 U.S.C. § l33l, and § 1367.

4.      Plaintiff is a natural persons who resides in the State of Utah.

5.      Plaintiff is a consumer within the FDCPA.

6.      Plaintiff is a consumer within the UCSPA.

7.      The Defendant Granite Law Group, PLLC (Granite Law) is a Utah professional limited liability company with its principal place of business in Layton, Utah.

8.      Defendant Granite Law's business consists of collecting on defaulted consumer debt for third parties, or buying defaulted consumer debt and then collecting on it.

9.      Defendant Granite Law is a debt collector within the FDCPA.

10.     Within the UCSPA the Defendant Granite Law is a supplier enforcing a consumer transaction against the Plaintiff.

11.     The Defendant Crossroads Fitness of Sandy, LLC (Crossroads) is a for-profit limited liability company which sells memberships in its gyms, and associated

services, to the general public.

12.     Within the UCSPA the Defendant Crossroads is a supplier engaging in or enforcing a consumer transaction against the Plaintiff, a health spa as defined by the Health Spa Services Protection Act, *Utah Code* § 13-23-2(3) (2015), and a personal trainer as defined Utah Administrative Rule, R153-23-3(5) (2012).

13.     The Defendant Thrive Systems, Inc. does business as National Fitness, and provides account servicing to Crossroads, and at all times material to the Plaintiff's claims in this action provided extended business office services, and payment compliance services to the Defendant Crossroads, and managed the billing and collection of amounts claimed owing from the Plaintiff up until the time the alleged defaulted debt was turned over to the Defendant Granite Law for collection.

14.     Within the UCSPA the Defendant National Fitness  is a supplier enforcing a consumer transaction against the Plaintiff.

15.     The Defendant Craig Duncan is a natural person who at all times material to the Plaintiff's claims was employed by the Defendant Crossroads Fitness and the Defendant National Fitness.

16.     Within the UCSPA the Defendant Craig Duncan is a supplier engaging in a consumer transaction.

17.     Defendant Does I through V are persons employed by or representing the Defendant Granite Law who oversaw and had control of the collection of the alleged debt from the Plaintiff and, in particular, who directed the collection efforts of the Defendant Granite Law against the Plaintiff, including collection of the amount stated

3

in the state court summons and complaint served on the Plaintiff on January 7, 2014, and who oversaw the Defendant Granite Law's debt collection policies, practices, and prosecutions.  At all times material to the Plaintiff's claims the Defendant Does I through V were acting for and representing, and had authority to act for and represent, the Defendant Granite Law.

18.     Within the FDCPA each of the Defendant Does are debt collectors.

19.     Within the UCSPA each of the Defendant Does is a supplier enforcing a consumer transaction against the Plaintiff.

20.     Defendant Does VI through X are persons employed by or representing the Defendant Crossroads who oversaw and had control of the setting up, administration, and billing of the Plaintiff for the gym membership and personal trainer services.  At all times material to the Plaintiff's claims the Defendant Does VI through X were acting for and representing, and had authority to act for and represent, the Defendant Crossroads.

21.     Within the UCSPA each of the Defendant Does VI through X is a supplier soliciting, engaging in, or enforcing a consumer transaction against the Plaintiff.

22.     Defendant Does XI through XV are persons employed by or representing the Defendant National Fitness who oversaw and had control of the collection of the alleged debt from the Plaintiff and, in particular, who were responsible for billing the Plaintiff, accounting for payments, administering the automatic debits against the Plaintiff's bank account, and who directed the collection efforts of the Defendant National Fitness against the Plaintiff, including collection of the amount stated in the

4

summons and complaint served on the Plaintiff on January 7, 2014, and who oversaw the Defendant Granite Law's prosecution of the state court collection action.  At all times material to the Plaintiff's claims the Defendant Does XI through XV were acting for and representing, and had authority to act for and represent, the Defendant National Fitness.

23.     Within the UCSPA each of the Defendant Does XI through XV is a supplier engaging in or enforcing a consumer transaction against the Plaintiff.

**A.     Actual Authority to Act for Crossroads Fitness**

24.     The Defendant Crossroads Fitness exercised control over the debt collection activities of the Defendant National Fitness against the Plaintiff by deciding whether the Defendant National Fitness should commence litigation against the Plaintiff, and also by deciding  whether that litigation should be stopped once it was commenced.  Further, the Defendant Crossroads Fitness, because of its access to the electronic records of debt collection  maintained by the Defendant National Fitness, monitored the debt collection activities of the Defendant National Fitness and directed the Defendant National Fitness in those debt collection activities.

25.     Further, the Defendant National Fitness exercised control over the debt collection activities of the Defendant Granite Law against the Plaintiff by instructing the Defendant Granite Law on whether it should commence litigation against the Plaintiff regarding the alleged debt, and whether the Defendant Granite Law should continue that litigation.

26.     As well, the operations of the Defendant National Fitness and the

5

Defendant Granite Law are so closely connected as to form a common enterprise. In particular, Plaintiff believes that after opportunity for further investigation and discovery he will be able to show that the Defendant National Fitness shares a common debt collection database with the Defendant Granite Law, offices in the same building, shared office services and expenses with the Defendant Granite Law, shares employees, and during the prosecution of the debt collection action against the Plaintiff the Defendant National Fitness was in frequent communication with employees of the Granite Law regarding that debt collection action against the Plaintiff, and directed the Defendant Granite Law in those debt collection activities.

27.     In undertaking to engage in debt collection activities on behalf of the Defendant Crossroads Fitness, the Defendant National Fitness, its officers and employees, including the Defendant Granite Law (and its officers and employees) consented to acting as agents of the Defendant Crossroads Fitness subject to its control in the collection from the Plaintiff of the alleged debt, or the Defendant Granite Law (and its officers and employees) consented to act as agents of the Defendant National Fitness subject to its control in the collection from the Plaintiff of the alleged debt, thereby becoming sub-agents of the Defendant Crossroads Fitness.

28.     Further, at all times material to the Plaintiff's claims the Defendant Crossroads Fitness granted to the Defendant National Fitness an express power to collect debts on behalf of Crossroads Fitness, and National Fitness granted to the Defendant Granite Law an express power to collect debts on behalf of National Fitness. The Defendant National Fitness and the Defendant Granite Law each accepted and

consented to act under the powers granted to them.

29.     The acts and omissions of the Defendant National Fitness, the Defendant
Granite Law, and their officers, employees, and agents who conducted activities against
the Plaintiff or communicated with the Plaintiff as described within this Complaint,
were committed within the time and space limits of their agency relationship with their
principal, the Defendant Crossroads Fitness.

30.     At all times material to the Plaintiff's claims, the acts and omissions of the
Defendant National Fitness, the Defendant Granite Law, and their officers, employees,
and agents were incidental to, or of the same general nature as, the responsibilities these
agents or sub-agents were authorized to perform by the Defendant Crossroads Fitness
in collecting consumer debts, including the collection of the alleged debt from the
Plaintiff.

31.     By committing these acts and omissions against Plaintiff to collect on the
alleged $1,764.00 debt, the Defendants National Fitness and Granite Law, their officers,
employees, and agents, were motivated to benefit their principal, the Defendant
Crossroads Fitness, in the collection of that amount.

32.     Accordingly, the Defendant Crossroads Fitness is liable to Plaintiff for the
intentional and negligent acts, errors, and omissions performed by the Defendants
National Fitness and Granite Law, their officers, employees, and agents in violation of
federal and state law, in their collection of the alleged debt from the Plaintiff.

**B.     Ratification**

33.     After the alleged $1,764.00 debt was turned over to the Defendant Granite

Law for collection, the Defendant Crossroads Fitness continued to monitor, through its communications with the Defendant National Fitness regarding its debt collection activities against the Plaintiff conducted through the Defendant Granite Law, the progress of their debt collection activities against the Plaintiff.

34.     In being provided with  near contemporaneous information from the Defendant National Fitness demonstrating that it was prosecuting a legal action against the Plaintiff to collect the alleged $1,764.00 debt on behalf of the Defendant Crossroads Fitness, the Defendant Crossroads Fitness knew of the particular steps being taken by the Defendant National Fitness to prosecute the debt collection action, including the garnishment actions taken against the Plaintiff, and in allowing the Defendant National Fitness and the Defendant Granite Law to retain the sums collected from the Plaintiff in that debt collection action, or in retaining the amounts paid over to Crossroads Fitness from that debt collection action, the Defendant Crossroads Fitness ratified the actions of the Defendant National Fitness and its sub-agents in commencing the debt collection action against the Plaintiff, in prosecuting the garnishment proceedings, and then in opposing the motions to set aside the default judgment.

35.     Further, after the December 17, 2013 demand letter to the Plaintiff by the Defendant Granite Law, the Defendant National Fitness continued to use information systems which kept a contemporaneous records of the Defendant Granite Law's debt collection activities to monitor and be in  communication with the Defendant Granite Law regarding its debt collection activities against the Plaintiff John Amador, which monitoring and communications provided the Defendant National Fitness with full

knowledge that the Defendant Granite Law had filed a legal action in which the Defendant National Fitness was named as the plaintiff claiming $404.00 more than the balance the Defendant National Fitness turned over to the Defendant Granite Law for collection, and $600.00 in personal training charges which the Defendant Granite Law continued to collect upon despite the Defendant National Fitness's specific advice to the Defendant Granite Law that those charges were no longer to be collected upon.

36.     In being provided with continuing information from the Defendant Granite Law demonstrating that it was prosecuting a legal action on behalf of the Defendant National Fitness against the Plaintiff to collect the alleged debt for the Defendant Crossroads Fitness, the Defendant National Fitness knowingly allowed itself to be named as the plaintiff in the state court debt collection action to be prosecuted against the Plaintiff John Amador, including the garnishment actions taken against the Plaintiff, and in allowing the Defendant Granite Law to retain the sums collected from the Plaintiff in that debt collection action, or in retaining some or all of the amounts paid over to National Fitness from that debt collection action, the Defendant National Fitness ratified the actions of the Defendant Granite Law and its sub-agents in prosecuting the state court debt collection action, including the garnishment proceedings and opposing the motions to set aside filed by the Plaintiff John Amador.

### C.     Apparent Authority

37.     The Defendant Crossroads Fitness, by its voluntary act, placed the Defendant National Fitness in the situation of collecting the alleged $1,764.00 debt from the Plaintiff, who was and is a person of reasonable prudence, conversant with the

tactics, methods, and nature of the business engaged in by third-party debt collectors (based on his prior experience with third-party debt collectors) such that he was justified in believing that the Defendant National Fitness, acting as the agent of the Defendant Crossroads Fitness, had authority to perform on behalf of the Defendant Crossroads Fitness the acts complained of in this pleading.

38.     Accordingly, the Defendant Crossroads Fitness is estopped from denying that the Defendant National Fitness had the authority to perform those acts on behalf of the Defendant Crossroads Fitness.

39.     Further, the Defendant Crossroads Fitness and/or the Defendant National Fitness, by either or both of their voluntary act, placed the Defendant Granite Law in the situation of collecting the alleged $1,764.00 debt from the Plaintiff, who was and is a person of reasonable prudence, conversant with the tactics, methods, and nature of the business engaged in by third-party debt collectors (based on his prior experience with third-party debt collectors) such that he was justified in believing that the Defendant Granite Law, acting as the agent of the Defendant National Fitness and/or the Defendant Crossroads Fitness, had authority to perform on behalf of either or both of those Defendants the acts complained of in this pleading.

40.     Accordingly, the Defendant Crossroads Fitness and/or the Defendant National Fitness are estopped from denying that the Defendant Granite Law had the authority to perform those acts for either or both of them.

**Factual Allegations**

41.     In late April or early May of 2012 the Defendant Crossroads Fitness came

to the Plaintiff's place of work to promote the benefits of membership in its gym, offering a $14.99 per month, no contract, no commitment gym membership.

42.     In reliance on that presentation, on July 14, 2012, the Plaintiff John Amador attended at the Defendant Crossroads Fitness to take advantage of that promotion and the Defendant Craig Duncan, the sales representative acting on behalf of the Defendant Crossroads, told Mr. Amador that the gym membership was $16.02 per month (including tax), with no commitment and no contract.

43.     When Mr. Amador questioned signing the agreement presented to him by Mr. Duncan, Mr. Duncan pointed to the first page of the agreement reciting a total membership cost of $16.02 ($14.99 per month plus tax), as well as a yearly maintenance fee of $48.00, and assured Mr. Amador that the Defendant Crossroads Fitness was only having him sign the agreement so that it could auto-bill his credit union for the monthly membership and annual maintenance fee. However, Mr. Duncan assured Mr. Amador that he could cancel the monthly gym membership at any time and that his only commitment would be for the current month's gym membership of $16.02.

44.     Specifically relying on the Defendant Crossroads Fitness presentation provided at his work and the representations of the Defendant Duncan, Mr. Amador signed the monthly gym membership agreement with the Defendant Crossroads Fitness (the Agreement).

45.     As provided for in the Agreement, commencing July 25, 2012, the regular monthly payments of $16.02 for Mr. Amador's Crossroads Fitness gym membership were automatically debited from his Transwest Credit Union account through his

Transwest Credit Union Visa debit card and the Defendant National Fitness continued to debit that account for those regular monthly gym charges through May 29, 2013.

46.     At all times material to the Plaintiff's claims in this action, at no time did any of these automatic deductions fail to clear Mr. Amador's account when presented for payment to Transwest Credit Union, and at no time did Mr. Amador instruct that payment should be stopped or denied for any Crossroads Fitness or National Fitness electronic request for payment presented to Transwest Credit Union.

47.     On July 1, 2013 Mr. Amador subscribed to an agreement with the Defendant National Fitness and the Defendant Crossroads Fitness for the services of a personal trainer, with an initial $100.00 payment on the date he signed the agreement, and payments of $100.00 per month for five months, totaling $600.00 (the Personal Training Agreement). Like the monthly cost of the Crossroads Fitness gym membership, it was agreed that the cost of the personal trainer was to be automatically debited from Mr. Amador's Transwest Credit Union account, the information for which the Defendants National Fitness and Crossroads Fitness already possessed.

48.     Throughout the time that Mr. Amador subscribed to the services of a personal trainer at the Defendant Crossroads Fitness, after an initial meeting with his personal trainer to assess Mr. Amador's training needs the Crossroads Fitness personal trainer assigned to Mr. Amador did not keep his appointments with Mr. Amador and never returned Mr. Amador's calls, thus preventing Mr. Amador from receiving the benefits of the training contract.

49.     Further, at no time did the Defendant Crossroads or the Defendant

National Fitness present to Mr. Amador's financial institution, Transwest Credit Union, any electronic request for payment of $100.00, and until December 17, 2013 the Defendants never provided to Mr. Amador any notice or indication that an electronic request for a $100.00 payment had been presented to Mr. Amador's Transwest Credit Union account and not paid.

50.     On December 17, 2013, as directed by the Defendants Crossroads Fitness and National Fitness, the Defendant Granite Law Group sent Mr. Amador a letter falsely alleging that Mr. Amador was in default on his obligations to National Fitness/Crossroads Fitness and alleging that he owed the Defendant National Fitness $1,764.00, but that if Mr. Amador disputed that debt in writing within 30 days of his receipt of that letter, the Defendant Granite Law would cease collection efforts on behalf of the Defendant National Fitness until Granite Law had verified the debt.

51.     The alleged debt of $1,764.00 was not owing because:

    i.     Defendants were claiming for two personal training contracts, each with a $600.00 accelerated balance, and Mr. Amador had agreed to only one personal training contract, which was not subject to acceleration because the Defendant Crossroads Fitness was in default on that agreement;

    ii.     The Defendant National Fitness and the Defendant Crossroads Fitness defaulted on their obligation to Mr. Amador to provide him with personal training by refusing to schedule personal training appointments and by refusing to respond to his telephone calls;

iii.   The Defendant National Fitness's own accounting shows that only $1,360.00 was owing on January 7, 2014, meaning the $1,764.00 balance claimed due was not only overstated by $1,200.00 for personal training contracts for which Mr. Amador had no obligation, it was also overstated by at least another $404.00;

iv.   Mr. Amador was not in default on his $16.02 monthly gym membership or his personal training contract;

v.   Mr. Amador's financial institution, TransWest Credit Union, never refused to pay electronic requests for payment from the Defendants National Fitness/Crossroads Fitness, and Mr. Amador was never in default on his obligations to National Fitness/Crossroads Fitness, meaning the Defendants wrongfully assessed the "Do Not Honor" charges, collection charges, and late charges against Mr. Amador which were included in the alleged $1,764.00 balance.

vi.   The *Utah Admin. Code*, R152-23-5(e) required that the Plaintiff's gym membership agreement with the Defendants Crossroads Fitness and National Fitness on the first page "itemize the costs to the consumer and shall include a statement as to the total cost of the contract." Id. The total cost listed on the first page of Mr. Amador's gym membership agreement was only $16.02, meaning Defendants' assessment and collection of monthly gym membership charges beyond that $16.02 was prohibited by law;

14

vii.   Mr. Amador never elected to renew his monthly membership with Crossroads Fitness after its expiration, thus making unlawful the additional monthly charges of $16.02 assessed by the Defendants after Mr. Amador's gym membership was not renewed;

viii.   After Mr. Amador's monthly membership non-renewed, the Defendants Crossroads and National Fitness failed to credit Mr. Amador for the unused portion of his $48.00 annual membership fee.

52.     On December 31, 2013, Mr. Amador responded to the Defendant Granite Law's December 17, 2013 letter by sending it a letter disputing the alleged $1764.00 debt and requesting verification of the debt, but offering to pay the balance properly owing, but not collected due to the Defendant National Fitness's own billing errors.

53.     But the Defendant Granite Law did not, as required by the FDCPA, 15 U.S.C. § 1692g(b), defer the commencement of litigation until it provided the requested verification.  Rather, on January 7, 2014 it served Mr. Amador with a ten day summons and complaint issued from the Third District Court, West Jordan Department, case no. 140400411, alleging that Mr. Amador was obligated to pay the Defendant National Fitness $1,764.20 plus interest, and attorney fees of $ 325.00.[1]

54.     On January 8, 2014, the Defendant Granite Law responded to Mr.

---

[1] In its February 14, 2014 filing in state court Granite Law admitted it received the Plaintiff's December 31, 2013 dispute letter on January 3, 2014. Nevertheless, it served the Plaintiff with debt collection process on January 7, 2014.

15

Amador's dispute letter not by verifying the debt, but by instead falsely alleging that:

      i.     Mr. Amador was responsible for the alleged return item charges incurred by the Defendant National Fitness/Crossroads Fitness on the $16.02 monthly gym charges electronically submitted to Transwest Credit Union;

      ii.    Mr. Amador had agreed to two personal training contracts, (even though: (1) the Defendant Granite Law's January 8, 2014 letter referred to a July 2, 2013 email from Crossroads Fitness and that email – written one day after Mr. Amador substituted the first personal training contract with a second personal training contract – stated "[p]er your request, we have changed your personal training payment of $100 from billing on the 15th of each month to now bill on the 20th of each month;" (2) the Defendant National Fitness's own collection notes showed that it was uncertain whether there were two personal training contracts; and (3) Mr. Amador had informed Crossroads Fitness/National Fitness there was only one personal training contract); and

      iii.   A balance of $1,764.00 plus attorney fees was owed, even though National Fitness's own accounting (which was in the possession of the Defendant Granite Law) showed on its face that this balance was – at the least – overstated by an erroneous undisclosed, unliquidated $404.00 charge; and also recited erroneous charges for: monthly $16.02 membership fees assessed after Mr. Amador's membership had expired, a first personal training contract for $600.00 (substituted on the same day it was written by a second training contract), a second personal training contract for $600.00 (even though the Defendant Crossroads Fitness had breached that contract before Mr. Amador began personal training), late fees on monthly charges not owed, collection

fees, and multiple "do not honor" charges for $15.00 even though Granite Law was specifically advised by National Fitness's payment processor that a "do not honor" code could be for a number of reasons, and did not necessarily mean that the paying bank had dishonored the requested payment.

55.     On January 31, 2014 the Plaintiff Amador, acting pro se, filed an answer in the state court collection action, but due to clerical error this Answer was not entered on the state court's docket until February 10, 2014, when the clerk noted on the state court docket that Mr. Amador had filed his answer on January 31, 2014.

56.     And as a result of being advised by the state court clerk that he needed to mail his Answer to the Defendant Granite Law, Mr. Amador mailed a copy of his January 31, 2014 Answer to the Defendant Granite Law.

57.     On February 3, 2014 –25 days after representing to Mr. Amador in Granite Law's January 7, 2015 "FDCPA Validation Notice" that it would take no further action to collect for 30 days --the Defendant Granite Law (without any supporting affidavit or other admissible evidence) had the clerk enter default judgment against the Plaintiff Amador in the state court debt collection action for an intentionally overstated claim of $2,194.20 ($1,764.20 for the alleged debt, $325.00 attorney fees, $105.00 costs), which overstated amount included the $404.00 erroneous, undisclosed, unliquidated charge.

58.     On February 11, 2014 the Defendant Crossroads Fitness sent Mr. Amador an email advising that their billing had been changed so that Mr. Amador would only be billed for one personal training contract, and the Defendant Crossroads Fitness's own collection notes of that same date (which were in the possession of the Defendant

Granite Law) state: "member claims only has 1 PT contract, not 2. Not sure where truth lies but in order to at least get some money, we are allowing him to be freed of 1 PT contract ($600 waived off balance)." But despite being explicitly advised by the Defendant National Fitness that there was only a claim for one personal training contract, the Defendant Granite Law continued to prosecute the state court claim for collection on two  personal training contracts.

59.     Mr. Amador then moved on February 10, 2014, pro se, to set aside that February 3, 2014 default judgment and the Defendant Granite Law responded to that motion on February 14, 2014 by filing an opposing memorandum in which it made the following false allegations:

        i.      That Mr. Amador entered into two separate personal training contracts with the Defendants Crossroads and National Fitness;

        ii.     That in late July 2013 the Plaintiff Amador returned one of the collection calls from the Defendant National Fitness (even though the National Fitness telephone records produced by the Defendant Granite Law show that the National Fitness telephone calls were all to the wrong number); and

        iii.    After a reasonable opportunity for investigation and discovery, Plaintiff believes the evidence will show that the Defendant Granite Law did have timely notice of the Plaintiff's January 31, 2014 state court answer, and so falsely alleged in its February 14, 2014 memorandum that it did not have notice of that answer prior to taking a default judgment.

60.     Subsequent to the entry of the default judgment the Defendants Crossroads Fitness

and National Fitness, through the Defendant Granite Law, intentionally and knowingly wrongfully garnished the Plaintiff John Amador's wages for an amount which was at least $1,004.00 in excess of the amount properly owing on the alleged debt owing to the Defendants Crossroads Fitness and National Fitness.

61.    After the Plaintiff Amador's legal counsel appeared in the state court action on March 9, 2015, the Defendant Granite Law continued to aggressively prosecute that action.

62.    A June 17, 2015 hearing was scheduled in state court on the Plaintiff Amador's motion, through counsel, to set aside the state court default judgment.

63.    In anticipation of the hearing of that motion to set aside, which the Defendants vigorously contested, and in an attempt to settle their clients' respective claims, counsel for the Plaintiff and counsel for the Defendant Granite Law met at Plaintiff's counsel's office on June 11, 2015.

64.    As a result of that meeting, on June 15, 2015 the Defendant Granite Law sent Plaintiff's counsel a letter, with the intent to use that letter in the state court proceeding to collect on the alleged debt, in which it falsely asserted:

> i.    that the Plaintiff Amador was in default and obligated on two personal training contracts, the Defendant Granite Law thereby violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status of a debt), § 1692e(10) (the use of any false representation or deceptive means in an attempt to collect any debt), § 1692(f)(1) (the collection of any amount not expressly authorized by the

agreement);

ii.    That the "do not honor" codes received from the Defendant

National Fitness's payment processor were the result of Mr.

Amador's financial institution declining the electronic payment

requests from National Fitness, the Defendant Granite Law thereby

violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status

of a debt), § 1692e(10) (the use of any false representation or

deceptive means in an attempt to collect any debt);

65.    On June 17, 2015 the Plaintiff Amador orally argued his motion to set

aside the state court default judgment, and the Defendants vigorously opposed those

arguments.

66.    On July 1, 2015 the Defendant Granite Law filed a "supplemental"

memorandum in the state court debt collection action, and attached to that

supplemental memorandum as an exhibit its June 15, 2015 letter, and then falsely

accused the Plaintiff Amador of misleading the state court at the June 17, 2015 oral

argument by:

i.    arguing that the Defendant National Fitness did not telephone Mr.

Amador to inform him of his alleged default;

ii.    arguing that the Plaintiff never defaulted on his contracts with the

Defendant National Fitness and the Defendant Crossroads Fitness;[2]

---

[2] Mr. Amador's Transwest Credit Union account statements show that electronic
payment requests from the Defendant National Fitness were never declined.

the Defendant Granite Law thereby violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status of the debt) and 15 U.S.C. § 1692e(10) (use of false representations to collect a debt);.

67.    In alleging the Plaintiff Amador misled the state court, the Defendant Granite Law falsely asserted that three transaction records (allegedly) produced by First Data Corp. dated 2013-07-15; 2013-17-26 [sic], and 2013-08-09 attached as Exhibit A to the Defendant Granite Law's July 1, 2015 supplemental memorandum filed in the state court actions, were original and true excerpts from First Data Corp's transaction records, when in fact those excerpts on their face show they are not true excerpts, the Defendant Granite Law thereby violating 15 U.S.C. § 1692e(10) (the use of any false representation or deceptive means in an attempt to collect any debt)

68.    And in alleging that the Plaintiff Amador misled the state court, the Defendant Granite Law falsely asserted that the transaction records (allegedly) produced by First Data Corp. attached a Exhibit A to the Defendant Granite Law's July 1, 2015 supplemental memorandum show that "Mr. Amador's credit card (ending in 9425) declined nine times," thus violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status of a debt), § 1692e(10) (the use of any false representation or deceptive means in an attempt to collect any debt). Again, by the Defendant Granite Law's own admission First Data Corp. advised Granite Law the "do not honor" codes could be for various reasons, and at no time did Mr. Amador's financial institution, Transwest Credit Union, decline any electronic request for payment from the Defendant National Fitness.

69.     On July 7, 2015 the state court set aside the default judgment entered against Mr. Amador in the state court debt collection action.

70.     At all times material to Plaintiff's claims, the Defendant Granite Law knew that the claim of $1,764.00 was inflated by at least $404.00, as of February 11, 2014 knew that another $600.00 of that $1,764.00 balance was not owed, and after reasonable opportunity for further investigation and discovery, the Plaintiff believes he will have evidentiary support to show that the Defendants Crossroads Fitness and National Fitness were, from the outset, aware that most, if not all, of the additional amounts claimed due by them in the state court collection case was not due and owing, but nevertheless knowingly and intentionally, through the Defendant Granite Law, prosecuted their state court collection case without regard to the merits of the allegations in their state court pleading.

71.     The foregoing acts and omissions were undertaken on behalf of the Defendants by their respective officers, agents, or employees acting at all times relevant hereto within the scope of that relationship.

72.     The foregoing acts and omissions of the Defendants were undertaken indiscriminately and persistently, as part of Defendants' regular and routine collection efforts, pursuant to a pattern and practice of the Defendants in collecting on debts that were not owed or were not in default, and without regard to or consideration of the identity or rights of the Plaintiff.

**RIGHT TO JURY TRIAL**

73.     Plaintiff claims the right to a jury trial under the 7th Amendment of the

United States Constitution and pursuant to *Fed. R. Civ. P.* 38.

## FIRST COUNT
### (Negligent Misrepresentation by the Defendants Crossroads Fitness, National Fitness, and Craig Duncan)

74.     The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

75.     In falsely representing to the  Plaintiff Amador that the total cost of the monthly gym membership was $16.02 (plus any applicable maintenance fee), the Defendant Crossroads, the Defendant National Fitness, and the Defendant Duncan affirmatively represented to him that at any given time the total cost of this obligation to the Defendant Crossroads and the Defendant National Fitness would only be $16.02 (plus any applicable yearly maintenance fee), that is, the Defendant Duncan falsely represented that the Defendants Crossroads Fitness and National Fitness would not enforce their written policy requiring a written cancellation notice be sent to National Fitness 30 days in advance of the month in which the membership was to be canceled.

76.     Plaintiff believes that after further investigation or discovery he will be able to show that in making this false representation these Defendants knew that it was the pattern, practice, and policy of the Defendant Crossroads Fitness and the Defendant National Fitness to routinely falsely recite on the first page of a monthly gym membership the total gym membership cost to the consumer as being only one month's cost.

77.     As well, Plaintiff believes that after further investigation or discovery he will be able to show that it was the pattern, practice, and policy of the Defendant

Crossroads Fitness and the Defendant National Fitness to affirmatively represent to consumers subscribing to a Crossroads Fitness monthly membership agreement during this time that the consumer had no obligation beyond a single month's membership cost (plus any applicable maintenance fee).

78.     And Plaintiff believes that after further investigation or discovery he will be able to show that in making the representations referred to in paragraph 75 above these Defendants knew that it was the pattern, practice, and policy of the Defendant Crossroads Fitness and the Defendant National Fitness to – regardless of the one month's total cost recited on the first page of the agreement – enforce their 30 day written cancellation policy, and to continue to bill and assess monthly gym charges (plus any applicable maintenance fees) against a consumer subscribed as a monthly gym member of Crossroads Fitness, until:

i. 36 months of monthly gym membership charges had been collected from a monthly member; or

ii. The Defendant National Fitness commenced a collection action against the monthly gym member.

79.     And, as was shown above, at all times material to the Plaintiff Amador's claims, the Defendant Crossroads Fitness and the Defendant National Fitness had a pecuniary interest in the operations and assets of Crossroads Fitness, and these Defendants knew of their own policies, procedures, and practices, and so were in a superior position to know the material facts of the membership sales process and collection on monthly memberships, and the Defendants should have reasonably

foreseen that the Plaintiff Amador would rely upon the representations made by them referred to in paragraph 74 above.

80.     Thus, the Defendant Crossroads Fitness, the Defendant National Fitness, and the Defendant Craig Duncan negligently falsely represented to the Plaintiff Amador that the total cost of a monthly gym membership with the Defendant Crossroads Fitness and the Defendant National Fitness was $16.02  (plus any applicable maintenance fee), that representation concerned a presently existing material fact, that representation was false, these Defendants negligently made that representation; they made that representation for the purposes of inducing the Plaintiff Amador to act upon it, the Plaintiff Amador acted reasonably not knowing that representation's falsity, the Plaintiff relied on that representation, that is, the Plaintiff allowed these Defendants to sign him up for a monthly gym membership and the Plaintiff was induced to act by these Defendants' representation that the total cost of a monthly gym membership was only $16.02  (plus any applicable maintenance fee), and as a direct, immediate, and proximate result of these Defendants false representation the Plaintiff Amador suffered injury and damage.

81.     Finally, because these breaches of duty were committed by the Defendant Crossroads Fitness and the Defendant National Fitness are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff John Amador, he is entitled to an additional sum for punitive damages due from the Defendants Crossroads Fitness and the Defendant National Fitness, as provided for by *Utah Code* §

78B-8-201.

## SECOND COUNT
### (Fraudulent Misrepresentation by the Defendants Crossroads Fitness, and National Fitness)

82.     The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

83.     In falsely representing to the  Plaintiff Amador that the total cost of the monthly gym membership was $16.02 (plus any applicable maintenance fee), the Defendant Crossroads, the Defendant National Fitness, and the Defendant Duncan affirmatively represented to him that at any given time the total cost of this obligation to the Defendant Crossroads and the Defendant National Fitness would only be $16.02 (plus any applicable yearly maintenance fee), that is,, the Defendant Duncan falsely represented that the Defendants Crossroads Fitness and National Fitness would not enforce their written policy requiring a written cancellation notice be sent to National Fitness 30 days in advance of the month in which the membership was to be canceled.

84.     Plaintiff believes that after further investigation or discovery he will be able to show that in making this false representation these Defendants knew that it was the pattern, practice, and policy of the Defendant Crossroads Fitness and the Defendant National Fitness to routinely falsely recite on the first page of a monthly gym membership the total gym membership cost to the consumer as being only one month's cost (plus any applicable maintenance fee).

85.     As well, Plaintiff believes that after further investigation or discovery he will be able to show that it was the pattern, practice, and policy of the Defendant

26

Crossroads Fitness and the Defendant National Fitness to affirmatively represent to consumers subscribing to a Crossroads Fitness monthly membership agreement during this time that the consumer had no obligation beyond a single month's membership cost (plus any applicable maintenance fee).

86.     And Plaintiff believes that after further investigation or discovery he will be able to show that in making the representations referred to in paragraph 83 above these Defendants knew that it was the pattern, practice, and policy of the Defendant Crossroads Fitness and the Defendant National Fitness to – regardless of the one month's total cost recited on the first page of the agreement – enforce their 30 day written cancellation policy, and to continue to bill and assess monthly gym charges (plus any applicable maintenance fees) against a consumer subscribed as a monthly gym member of Crossroads Fitness, until:

i. 36 months of monthly gym membership charges had been collected from a monthly member; or

ii. The Defendant National Fitness commenced a collection action against the monthly gym member.

87.     And, as was shown above, at all times material to the Plaintiff Amador's claims, the Defendant Crossroads Fitness and the Defendant National Fitness had a pecuniary interest in the operations and assets of Crossroads Fitness, and these Defendants knew of their own policies, procedures, and practices, and so were in a superior position to know the material facts of the membership sales process and collection on monthly memberships, and the Defendants should have reasonably

27

foreseen that the Plaintiff Amador would rely upon the representations made by them referred to in paragraph 82 above.

88.     Thus, the Defendant Crossroads Fitness and the Defendant National Fitness intentionally and fraudulently falsely represented to the Plaintiff Amador that the total cost of a monthly gym membership with the Defendant Crossroads Fitness and the Defendant National Fitness was $16.02  (plus any applicable maintenance fee), that representation concerned a presently existing material fact, that representation was false, these Defendants intentionally and fraudulently made that representation; they made that representation for the purposes of inducing the Plaintiff Amador to act upon it, the Plaintiff Amador acted reasonably not knowing that representation's falsity, the Plaintiff relied on that representation, that is, the Plaintiff allowed these Defendants to sign him up for a monthly gym membership and the Plaintiff was induced to act by these Defendants' representation that the total cost of a monthly gym membership was only $16.02  (plus any applicable maintenance fee), and as a direct, immediate, and proximate result of these Defendants false representation the Plaintiff Amador suffered injury and damage.

89.     Finally, because these breaches of duty were committed by the Defendant Crossroads Fitness and the Defendant National Fitness are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff John Amador, he is entitled to an additional sum for punitive damages due from the Defendants Crossroads Fitness and the Defendant National Fitness, as provided for by *Utah Code* §

78B-8-201.

**THIRD COUNT**
(Conversion)

90.     The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

91.     At all times material to the Plaintiff's claims in this action the Defendant Crossroads Fitness, the Defendant National Fitness, the Defendant Granite Law, and one or more of the Defendant Does I-XV had an intent to exercise dominion or control over the Plaintiff's funds inconsistent with the Plaintiff's right to those funds.

92.     At all times material to the Plaintiff's claims in this action the Defendant Crossroads Fitness, the Defendant National Fitness, the Defendant Granite Law, and one or more of the Defendant Does I-XV acted in bad faith in garnishing funds from the Plaintiff's wages, in that those Defendants knew:

  i.      the balance they represented to the Court as due and owing the Defendant National Fitness was overstated by at least $1,004.00 (consisting of an erroneous, undisclosed, unliquidated charge of $404.00, and $600.00 for a non-existent additional personal training contract);

  ii.     that they were limited by Utah law to claiming monthly gym membership for the total cost of $16.02 stated on the first page of the membership agreement with Mr. Amador;

  iii.    that the "do not honor code" did not confirm that Mr. Amador's financial institution had declined payment to the Defendant National Fitness;

iv.     that they had assessed return item fees and late fees on monthly membership fees which were never in default; and

v.     that they had been served with Mr. Amador's answer prior to the entry of default judgment but concealed this fact from the state court (this allegation is one which the Plaintiff believes after further investigation and discovery he will be able to establish).

93.     Despite this specific knowledge the Defendants knowing and intentionally falsely represented to the state court the amount owing to the Defendant National Fitness as $1,764.00, took a default judgment for $2,194.20, opposed the Plaintiff's pro se motion to set aside by making the same false statements referred to in paragraph 75 above, and obtained an order augmenting the Defendant Granite Law's attorney fees by an additional $1,495.00, and garnished the Plaintiff's wages for $3,673.00, an amount the Defendants, through the Defendant Granite Law, knew included the false and erroneous charges identified above.

94.     And by proceeding in bad faith and using the debt collection action to perpetrate a fraud upon the state court, and by using the state court action to extract from Plaintiff sums in excess of that allowed by the rules of the state court, the Defendants, through the Defendant Granite Law, wrongfully converted at least $1,004.00 of the Plaintiff's funds to the Defendants' own use.

95.     As a direct and immediate result of the Defendants' conversion of the Plaintiff's funds in the state court collection action the Plaintiff was damaged in the amount of the Plaintiff's funds the Professional Corporation wrongfully converted and

incurred actual damages in the form of emotional distress as described above.

96.     Plaintiff believes that after further investigation or discovery he will be able to show that the Defendant Granite Law files hundreds of collection actions a year on behalf of the Defendant National Fitness, and on information and belief has a pattern and practice of deliberately and intentionally overstating the amount owing on a National Fitness claim, and then using legal process to collect that overstated claim, thereby wrongfully converting judgment debtors' funds to its own use.

97.     Plaintiff is entitled to a judgment against the Defendants Crossroads Fitness, National Fitness, Granite Law, and one or more of the Defendant Does I-XV for the Defendant Granite Law's conversion on their behalf of the Plaintiff's funds.

**FOURTH COUNT**
(Breach of Statutory Duty – *Utah Administrative Code*, R152-23-5(e))

98.     The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

99.     At all times material to the claims made herein, the Defendants Crossroads Fitness, National Fitness, and Does I through X had a duty to Plaintiff to comply with the provisions of the *Utah Admin. Code*, R152-23-5(e)("All consumer contracts shall itemize the costs to the consumer and shall include a statement as to the total cost of the contract. These costs shall be clearly stated on the first page of the contract.").

100.    These Defendants breached that duty by:

    i. Failing to state the total cost of a Crossroads Fitness/National Fitness

monthly gym membership on the first page of the monthly gym membership agreement;

ii. Failing to properly itemize the cost of a Crossroads Fitness/National Fitness monthly gym membership on the first page of the monthly gym membership agreement;

iii. Reciting an automatic renewal provision on the first page of the Crossroads Fitness/National Fitness monthly gym membership agreement, without reciting that unless a 30 day written cancellation notice was provided the automatic renewal would operate for 36 months;

iv. Reciting in the automatic renewal provision on the first page of the Crossroads Fitness/National Fitness monthly gym membership agreement that "all payments must be current to terminate the membership agreement;"

v. Reciting in the automatic renewal provision on the first page of the Crossroads Fitness/National Fitness monthly gym membership agreement that "any additional service(s) will also continue monthly at their same rate(s) under the same requirement to provide a written notice of cancellation," but without complying with *Utah Admin. Code*, R152-23-5(e) by including that same statement on the first page of the additional service agreement, that is, by including that same statement on the first page of the personal training agreement with the Plaintiff Amador.

101.   As a direct, immediate, and proximate result of that breach the Plaintiff

incurred actual, special, and consequential damages as stated above for which the Defendants are liable.

**FIFTH COUNT**
(Civil Conspiracy)

102.    The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

103.    At all times material to the Plaintiff John Amador's claims herein, the Defendants Crossroads Fitness, National Fitness, Granite Law, and one or more of Does I through XV, had combined and conspired for the purpose of collecting amounts which were not owed.

104.    In particular, these Defendants combined and conspired to collect the erroneous, undisclosed, unliquidated $404.00 charge, said conspiracy having commenced when the Defendant Granite Law sent the Plaintiff Amador the December 17, 2013 letter demanding payment of $1,764.00, which amount included the erroneous, undisclosed, unliquidated $404.00 charge and the Defendants Crossroads Fitness, National Fitness, and one or more of the Defendant Does I through XV having agreed that the Defendant Granite Law could commence a state court collection action to collect that claim of $1,764.00, even though their own records showed that the balance owed by the Plaintiff Amador was, at most, $1,360.00.

105.    In agreeing to take concerted action to prosecute a debt collection action which included the erroneous, undisclosed, unliquidated $404.00 charge the Defendant Granite Law, and one or more of  Does I through V committed the following unlawful,

overt acts including:

    i.      Numerous violations of the FDCPA as enumerated below;

    ii.     Numerous violations of the UCSPA as enumerated below;

    iii.    Conversion of the Plaintiff's funds, as stated above;

    iv.    Negligent Misrepresentation, as stated above;

    v.     Fraudulent Misrepresentation, as stated above;

    vi.    Breach of Statutory Duty under *Utah Admin Code* R153-23-5(e), as stated above.

106.    As a direct, immediate, and proximate result of these Defendants taking this concerted action the Plaintiff suffered actual damages in the form of emotional distress, and the loss of the funds of which the Defendants wrongfully deprived him.

107.    Plaintiff believes that after further investigation or discovery he will be able to show that the Defendant Granite Law files hundreds of collection actions a year on behalf of the Defendant National Fitness and on information and belief has a pattern and practice of routinely conspiring with the Defendant National Fitness to collect erroneous, unliquidated charges which are never disclosed to the state court.

108.    As well, because these breaches of duty were committed by these Defendants are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of the Plaintiff John Amador, he is entitled to an additional sum for punitive damages due from these Defendants, as provided for by *Utah Code* § 78B-8-201.

109.    Plaintiff is entitled to the entry of judgment against the Defendants for the

injury and damages he incurred as a result of their civil conspiracy.

**SIXTH COUNT**
**(Violation of the FDCPA by Granite Law)**

110.    The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

111.    In its collection efforts against the Plaintiff, Granite Law and each of the Defendant Does I  through  violated the FDCPA by:

i.      Asserting in the June 15, 2015 letter (see ¶ 64 above) that the Plaintiff Amador was obligated on two personal training contracts, thereby violating 15 U.S.C. § 1692e(2)(A)(character, amount, or legal status of the debt), 15 U.S.C. § 1692e(10)(use of any false representation or deceptive means in collecting a debt), and 15 U.S.C. § 1692f(1)(collecting an not expressly authorized by the agreement creating the debt or by law);

ii.     Asserting in the June 15, 2015 letter that the "do not honor" codes received from the Defendant National Fitness's payment processor resulted from Mr. Amador's financial institution declining payment of electronic payment requests submitted by the Defendant National Fitness (see ¶ 64 above),  thereby violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status of the debt) and 15 U.S.C. § 1692e(10) (use of false representations to collect a debt);

iii.    Falsely asserting in the July 1, 2015 supplemental memorandum that the Plaintiff Amador misled the state court at the June 17, 2015 oral argument (see ¶ 49 above), thereby violating 15 U.S.C. § 1692e(2)(A) (character, amount, or legal status

of the debt) and 15 U.S.C. § 1692e(10) (use of false representations to collect a debt);

    iv. Falsely alleging that three alleged transaction records were true

excerpts provided by the Defendant National Fitness's payment process (see ¶ 50

above) thereby violating 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10) (use of false

representations to collect a debt);

    v. Falsely alleging that the Plaintiff Amador's financial institution

declined nine electronic payment requests submitted by the Defendant National Fitness

(see ¶ 51 above), thereby violating 15 U.S.C. § 1692e(10) (use of false representations to

collect a debt).

  112. As is shown in ¶¶ 50, 52-54, 57, 59, 60, 64, 66-68 above the Defendant

Granite Law has a pattern and practice of violating the FDCPA (and Plaintiff believes

that after a reasonable opportunity for discovery the evidence will show that the

Defendant has a pattern and practice of violating the FDCPA in other debt collection

cases), and so for the violations of the FDCPA enumerated in ¶ 58 above, Plaintiff is

entitled to the greater of statutory damages of  $1,000.00 from Granite Law and one or

more of the Defendants Does I through V, or his actual damages.

**SEVENTH COUNT**
**(Violation of the UCSPA by Crossroads and National Fitness)**

  113. The Plaintiff repeats, re-alleges, and incorporates by reference the

foregoing paragraphs.

  114. As a matter of law, the monthly gym membership agreement and the

personal training agreement incorporate Utah law subsisting at the time of each

36

agreement's execution.

115.    Within two years prior to the date of this action the Defendants

Crossroads Fitness, National Fitness, and one or more of the Defendant Does VI

through XV engaged in acts and practices in relation to Plaintiff which were in violation

of the Utah Consumer Sales Practices Act, § 13-11-4 by:

        i.    indicating that the monthly gym membership agreement with the

Plaintiff had a total cost of $16.02 stated on the face of that agreement, when it did not,

thus violating Utah Code § 13-11-4(2)(h)(indicating hat a specific price advantage exists,

if it does not.).  See ¶¶ 51.vi. (Utah law requires a statement on the first page of the total

cost to the consumer of a gym membership), and 53 (despite Plaintiff's dispute

Defendants' commenced collection action to collect on the full $1,764.00) above;

        ii.    indicating, despite non-default by the Plaintiff, that the Defendant

Granite Law had a right to file a legal action to collect on the membership agreement

and personal training agreement (*Utah Code* § 13-11-4(j)(i) (indicating that a consumer

transaction has rights or remedies when it does not) .  See ¶¶ 51 (Plaintiff not in default)

and 53 (Defendants commenced collection action to collect on the full $1,764.00) above:

        iii.    indicating in the monthly gym membership agreement and the

personal training agreement that Defendants would automatically debit Plaintiff's bank

account and that they would not otherwise require payment of the membership

agreement or personal training agreement. (*Utah Code* § 13-11-4(j)(i) (indicating that a

consumer transaction has rights or remedies when it does not)). See ¶¶ 43, 45-47, 49

above;

iv.     falsely stating that the Plaintiff was obligated on two personal training contracts, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 51.i., 54.ii, and 64.i., above.

v.     after receiving payment for the Defendant Crossroads Fitness and the Defendant National Fitness personal training services, failing to furnish those services within the time represented (*Utah Code* § 13-11-4(l)). See ¶¶ 42, 51.i & ii,, 54.iii., above.

vi.     including in the alleged $1,764.00 debt an erroneous, undisclosed, unliquidated charge for $404.00, thereby indicating that a consumer transaction involves obligations if the representation is false, and (r) charging a consumer for a consumer transaction or a portion of a consumer transaction that has not been previously agreed to by the consumer (*Utah Code* § 13-11-4(j)(i)&(r)). See ¶¶ 35, 51.iii, 54.iii, and 70 above.

vii.     falsely stating that if the Plaintiff Amador disputed the debt within 30 days of the Defendant Granite Law's debt validation notice, the Defendant Crossroads and the Defendant National Fitness would not collect on the debt – through the Defendant Granite Law -- until it provided verification of the debt, thereby indicating that a consumer transaction involves remedies if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 50, 52, 53 above.

viii.     falsely stating that the Plaintiff was responsible for the return item charges incurred by the Defendants, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 51v,

and 54.i. above.

ix.     falsely stating that the Defendant National Fitness had telephoned the Plaintiff and put him on notice that the electronic payment requests to the Plaintiff's financial institution were not clearing, thus indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not (*Utah Code* § 13-11-4(e)). See ¶ 59.ii., and 66.i., above.

x.      indicating that the Defendants could, without affidavit evidence or other admissible evidence, properly take default judgment against the Plaintiff for the unliquidated amount of $404.00, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 57.

xi.     indicating that the Defendants could garnish the Plaintiff John Amador's wages for an amount which was, at the least, $1,004.00 more than was properly owing to the Defendants, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 60 above.

xii.    indicating that the Plaintiff's financial institution had repeatedly declined electronic payment requests from the Defendant National Fitness, thus indicating that a consumer transaction involves rights or remedies if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 50, 54.i., 64.ii., 67, and 68, above.

116.    For each of those violations of the UCSPA, Plaintiff is entitled to the greater of statutory damages of $2,000.00 from each of the Defendants Crossroads Fitness, National Fitness and one or more of Does VI through XV, or Plaintiff's actual damages, whichever is greater.

EIGHTH COUNT
(Violation of the UCSPA by the Defendant Granite Law)

117.    The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

118.    Within two years prior to the date of this action the Defendant Granite Law and each of the Defendant Does I through V engaged in acts and practices in relation to Plaintiff which were in violation of the Utah Consumer Sales Practices Act, § 13-11-4, by:

i.    indicating, despite non-default by the Plaintiff, that the Defendant Granite Law had a right to file a legal action to collect on the membership agreement and personal training agreement (*Utah Code* § 13-11-4(j)(i) (indicating that a consumer transaction has rights or remedies when it does not) .  See ¶¶ 51 (Plaintiff not in default) and 53 (Defendants commenced collection action to collect on the full $1,764.00) above:

ii.    falsely stating that the Plaintiff was obligated on two personal training contracts, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 51.i., 54.ii, and 64.i., above.

iii.    including in the alleged $1,764.00 debt an erroneous, undisclosed, unliquidated charge for $404.00, thereby indicating that a consumer transaction involves obligations if the representation is false, and (r) charging a consumer for a consumer transaction or a portion of a consumer transaction that has not been previously agreed to by the consumer (*Utah Code* § 13-11-4(j)(i)&(r)). See ¶¶ 35, 51.iii, 54.iii, and 70 above.

iv.    falsely stating that if the Plaintiff Amador disputed the debt within

40

30 days of the Defendant Granite Law's debt validation notice, the Defendant Crossroads and the Defendant National Fitness would not collect on the debt – through the Defendant Granite Law -- until it provided verification of the debt, thereby indicating that a consumer transaction involves remedies if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 50, 52, 53 above.

v. falsely stating that the Plaintiff was responsible for the return item charges incurred by the Defendants, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 51v, and 54.i. above.

vi. falsely stating that the Defendant National Fitness had telephoned the Plaintiff and put him on notice that the electronic payment requests to the Plaintiff's financial institution were not clearing, thus indicating that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not (*Utah Code* § 13-11-4(e)). See ¶ 59.ii., and 66.i., above.

vii. indicating that the Defendants could, without affidavit evidence or other admissible evidence, properly take default judgment against the Plaintiff for the unliquidated amount of $404.00, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 57.

viii. indicating that the Defendants could garnish the Plaintiff John Amador's wages for an amount which was, at the least, $1,004.00 more than was properly owing to the Defendants, thus indicating that a consumer transaction involves obligations if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶ 60 above.

41

ix.      indicating that the Plaintiff's financial institution had repeatedly declined electronic payment requests from the Defendant National Fitness, thus indicating that a consumer transaction involves rights or remedies if the representation is false (*Utah Code* § 13-11-4(j)(i)). See ¶¶ 50, 54.i., 64.ii., 67, and 68, above.

x.      collecting on the alleged $1764.00 debt, thereby indicating that a consumer transaction involves obligations if the representation is false, and (r) charging a consumer for a consumer transaction or a portion of a consumer transaction that has not been previously agreed to by the consumer (*Utah Code* § 13-11-4(j)(i)&(r)). See ¶¶ 28-31 above.

119.      For each of those violations of the UCSPA, Plaintiff is entitled to the greater of statutory damages of $2,000.00 from each of the Defendants Granite Law and one or more of the  Does I through V, or Plaintiff's actual damages, whichever is greater.

## NINTH COUNT
### (Claim for Declaratory Relief against the Defendants)

120.      The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

121.      This claim for declaratory relief is brought pursuant to *Utah Code* § 13-11-19(1),[3] and the *Federal Declaratory Judgment Act*, 28 U.S.C. §2201(a) to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal

---

[3] (1) Whether he seeks or is entitled to damages or otherwise has an adequate remedy at law, a consumer may bring an action to: (a) obtain a declaratory judgment that an act or practice violates this chapter . . . .

relations between the Plaintiff as the alleged debtor of the Defendants Crossroads Fitness and National Fitness as Plaintiff's alleged creditors.

122.    As a matter of law, every agreement entered into under the laws of the State of Utah incorporates the laws of this state then subsisting.

123.    The form of monthly gym membership agreement used by the Defendants Crossroads Fitness and National Fitness with the Plaintiff was their standard form of agreement for monthly gym memberships, and so it is their pattern and practice to use that form of agreement for all monthly gym memberships.

124.    Further, it is the Defendant Crossroads Fitness, the Defendant National Fitness, and the Defendant Granite Law's pattern and practice to, in the case of a consumer not paying a second month's monthly gym membership fee without have given the notice required by the automatic renewal clause on the first page of the monthly agreement, classify the consumer as being in default, then demand and collect monthly gym membership fees from such consumers accruing beyond the initial one month term until 36 months of gym membership fees are collected or a legal action is filed to collect on the account.

125.    Accordingly, Plaintiff seeks a declaratory judgment stating that:

The form of monthly gym membership agreement used by the Defendants Crossroads Fitness and National Fitness violates Utah law in that it does not on its first page correctly "itemize the costs to the consumer and include a statement as to the total cost of the contract," rather in a false and deceptive manner that form of agreement recites on its first page only one month's cost for a gym membership (i.e., in Plaintiff's case, $16.02) while at the same time reciting that the monthly membership will automatically renew for an unspecified period of time, but then reciting on the back of the page the period of time is 36 months.

126.     An actual and present controversy exists between the parties because the Defendants  continues to assert that the form of monthly gym membership agreement used by the Defendants Crossroads Fitness and National Fitness is fully enforceable as written.

127.     Plaintiff requests declaratory relief as authorized by 28 U.S.C. § 2201 and § 2202.

## TENTH COUNT
### (Claim for Injunctive Relief against the Defendants)

128.     The Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

129.     This claim for injunctive relief is brought pursuant to *Utah Code* § 13-11-19(1),[4]  and the *All Writs Act*, 28 U.S.C. § 1651.

130.     As a matter of law, every agreement entered into under the laws of the State of Utah incorporates the laws of this state then subsisting.

131.     Plaintiff preferred the Defendant Crossroads Fitness facilities over other gyms he visited (i.e., Plaintiff preferred the Crossroads Fitness group training programs, the staff, the cleanliness of the facility, and the fact that his co-workers attended there) and Plaintiff would, but for the unfair and deceptive terms in the form of monthly gym membership agreement used by the Defendants Crossroads Fitness and National Fitness, continue to patronize the Crossroads Fitness facilities under a

---

[4] (1) Whether he seeks or is entitled to damages or otherwise has an adequate remedy at law, a consumer may bring an action to: . . . (b) enjoin, in accordance with the principles of equity, a supplier who has violated, is violating, or is likely to violate this chapter.

monthly gym membership.

132.    Specifically, Plaintiff objects to the form of monthly gym membership agreement used by the Defendants Crossroads Fitness and National Fitness because it violates Utah law in that it does not on its first page correctly "itemize the costs to the consumer and include a statement as to the total cost of the contract," rather in a false and deceptive manner that form of agreement recites on its first page only one month's cost for a gym membership (i.e., in Plaintiff's case, $16.02) while at the same time reciting an automatic renewal clause for a unspecified period of time.

133.    Although the Defendant Crossroads Fitness's physical facilities provided on a monthly basis best meet the Plaintiff's needs for general work-out and physical training, Plaintiff cannot presently use those facilities on a monthly basis because of the Defendant Crossroads Fitness's and the Defendant National Fitness's continued use of the illegal form of monthly gym membership agreement.

134.    To the extent that irreparable harm is material to Plaintiff's claim for injunctive relief under *Utah Code* § 13-11-19(1), the Plaintiff will suffer irreparable injury, loss, or damage unless he is granted injunctive relief against the Defendant Crossroads Fitness.

135.    In the within action there would be irreparable harm to the Plaintiff unless injunctive relief is granted in that the Plaintiff is denied the use of the Defendant Crossroads Fitness's physical facilities on a monthly basis for general work-outs and physical training.

136.    Plaintiff cannot be adequately compensated in damages, that is his

damages for his loss of the use of the Defendant Crossroad Fitness's physical facilities for general work-outs and physical training cannot be measured by any certain pecuniary standard. Thus, there is no adequate remedy at law for his damages, that is, a remedy at law would not be as complete, practical, and efficient to the prompt administration of justice as equitable relief.

137.    Accordingly, the Plaintiff is entitled to injunctive relief prohibiting the Defendants Crossroads Fitness and the Defendant National Fitness from using any form of monthly gym membership agreement which does not on its first page correctly "itemize the costs to the consumer and include a statement as to the total cost of the contract."

**WHEREFORE** Plaintiff respectfully requests this Court to enter judgment for the Plaintiff and against the Defendants by awarding Plaintiff declaratory and injunctive relief and such damages as are permitted by law, statutory, actual, consequential, special, and compensatory,  including:

a.    Plaintiff's actual and consequential damages resulting from the Defendant Crossroads Fitness, the Defendant National Fitness's, and the Defendant Granite Law's, and the Defendant Craig Duncan's tortious conduct;

b.    Plaintiff's actual damages resulting from the Defendant Granite Law's and one or more of the Does I through V's violation of the FDCPA or  $1,000.00 in statutory damages from each of the Defendants Granite Law and one or more of Does I through V for each of their FDCPA violations.

c.    Plaintiff's actual damages resulting from each of the Defendants' violation

of the UCSPA or $2,000 in statutory damages from each of the Defendants for each of their USCPA violations.

       d.     Punitive damages from the Defendants Crossroads Fitness, National Fitness, and Granite Law as provided for by *Utah Code* § 78B-8-201.

       e.     Plaintiff's costs of suit and reasonable attorney fees provided for by the FDCPA and UCSPA.

       f.     An order granting Plaintiff declaratory and injunctive as stated above, and such other and further relief as law or equity may provide.

       DATED this 23rd day of November, 2015.


                                    _____/S/_____
                                    RONALD ADY, Attorney for the
                                    Plaintiff John Amador